support the petition in case 19,563 as would be required to support the cause of action in this case. The same measure of damages would be applicable in both cases, and the recovery in 19,563 would operate as a bar to a recovery in this case, so that we regard the plea in abatement, or more properly the answer which sets forth the facts as to the pendency of case 19,563, as well founded, and this being our view of the case, the action should be and is accordingly abated, and the petition herein is dismissed at the costs of the plaintiff.

## WORK HOUSE GUARD INJURED BY EXPLOSION.

Superior Court of Cincinnati, General Term.

WILLIAM HENRY BELL v. THE CITY OF CINCINNATI.

Decided, April 19, 1908.

*Municipal Corporations—Governmental as Distinguished from Corporate Powers—Profitable Labor by Workhouse Prisoners—Guard Injured in an Explosion—City not Liable—Negligence.*

1. In putting some of the prisoners confined in the work house, to labor in a quarry, and selling some of the work obtained by them, the city is not conducting a private corporate enterprise, but is exercising a delegated state function, in furtherance of upholding the public peace.
2. No liability attaches to a municipality on account of injuries received by a workhouse guard resulting from an explosion which occurred while he was thus acting as a work house official.

*Dudley V. Sutphin,* Assistant City Solicitor, for plaintiff in error.

*Charles W. Baker,* contra.

SPIEGEL, J.; SHATTUCK, J., and HOFFHEIMER, J., concur.

Plaintiff in error, the City of Cincinnati, assigns numerous errors, upon each of which it asks a reversal of the judgment rendered in special term upon the aforesaid cause. The principal assignment upon which many errors are predicated are

the overruling of the demurrers to the original and amended petitions, and the overruling of the motions both at the close of plaintiff's testimony and of all the testimony, to instruct a verdict for the defendant, and for a new trial, all upon the ground that the city was engaged in the exercise of a governmental state function and not performing any ministerial duty imposed upon the city in its corporate capacity.

To the original petition the city itself filed an answer, but by leave of court withdrew it and entered a demurrer based upon the ground already stated.

The rule in Ohio regarding the distinction between the exercise of governmental and purely municipal functions by a city has been laid down by Judge Gholson in *Western College* v. *Cleveland,* 12 O. S., 375, as follows:

"It is obvious that there is a distinction between the different powers delegated to preserve the peace and protect persons and property, whether to be exercised by legislation or the appointment of proper officers, and those powers and privileges which are to be exercised for the improvement of the territory comprised within the limits of the corporation and its adaptation to the purposes of residence or business. As to the first the municipal corporation represents the state discharging duties incumbent upon the state; as to the second it represents the pecuniary and proprietary interests of individuals. As to the first, responsibility for acts done or omitted is governed by the same rule of responsibility which applies to like delegations of power. As to the second, the rules which govern responsibility of individuals are properly applicable."

Under the state function of protecting the peace, our courts, in common with the courts of every other state where this question has arisen, have included the taking care by the city of its prisoners by means of prisons, jails and work houses, as well as by the employment of policemen and work house guards, who under the law of our state are invested with the powers of policemen (Section 2105, Revised Statutes). Thus, in *Rose* v. *Toledo,* 1 C. C.—N. S., 321, the circuit court held that the city was not liable to a prisoner confined in a work house for injuries to his health. The court said:

"The city in the performance of such duties, acts not for the individual but for the public, acts in a governmental capacity for the benefit of the people. The work house is constructed and maintained not for the benefit and pleasure of those who may be so unfortunate as to be committed to it and confined therein, but it is constructed and maintained under the laws of the state for a public purpose as one of the institutions of government for the imprisonment of wrong-doers, and they are confined therein for correction and punishment as the penitentiary at Columbus is constructed and maintained for similar purposes."

Also, *Greenville* v. *Commissioners,* 3 C. C.—N. S., 212:

"It can not be doubted that the power conferred on municipalities to preserve the peace and protect persons and property by the arrest of offenders and their condemnation and detention in jails and workhouses is of a public or governmental nature, in which the soverign state exercises its functions through the agency of the municipality. In such cases the non-liability of the municipality rests upon the same reason as does that of the sovereign exercising like powers."

Without citing the numerous authorities upon this subject from other states, I shall only quote the latest writer upon this topic, Mr. Howard S. Abbott, who has covered the authorities in his work "Municipal Corporations," wherein he lays down the rule (Vol. 3, par. 966) as follows:

"The preservation of the public peace is another purely governmental function in respect to the character of which there can be no dispute. The same rule of non-liability, therefore, applies, and public corporations will not be held liable for injuries, either to their officers while in the performance of their duties, or to others who may be injured by them, nor for the defective condition of jails, court houses, prisons or buildings used in the administration of justice, or their appliances."

Believing this to be the law, the court below erred in not sustaining the demurrer to the original petition. The suit against the city, as stated in said petition, was based upon the assumption that the city was acting in its corporate capacity as a municipality and not as an agent of the state in the exercise of the latter's governmental functions.

The petition alleges that the plaintiff was injured by the explosion of certain caps contained in a box which he was trying to open, he being a work house guard at the quarry near the work house, in which certain prisoners were working at quarrying stone and occasionally blasting for that purpose; that he had no knowledge or experience in handling said caps and other explosives, nor that he appreciated or realized the dangers connected therewith, and that his ignorance and inexperience was well known to the defendant city and its officers superior to and in command of the plaintiff. The petition was demurrable upon the ground already stated, but also under the law covering the relations of master and servant, because it did not allege one of the essential allegations necessary to fixing liability on the master, namely, that the city had knowledge, actual or constructive, of the risk plaintiff was running, and did not instruct him in regard thereto.

The city, upon the overruling of the demurrer to said original petition, to which it excepted, filed an answer admitting its corporate character and employment of the plaintiff, and the injuries which he received, but denying every other statement therein contained, and further answering it alleged as a matter of fact that in thus employing its prisoners in said quarry it was engaged in a governmental function of the state, and that plaintiff was one of its officers employed therein; and further that plaintiff was guilty of contributory negligence which directly caused his injuries.

The case went to trial in February, 1907, and during its progress counsel for plaintiff obtained leave of court, the city excepting, to amend his petition by further alleging that said city and its servants superior in authority to plaintiff, whose orders he was bound to obey, knew that he was entirely ignorant of the danger of working with said dangerous explosives, and that neither the city nor its aforesaid officers ever warned or instructed him as to any of said dangers, although they well knew them, having had a long time previously charge of said quarry cutting and excavating, by blasting and other means,

stone from the same, which the city sold to dealers and consumers for profit, and had been so doing for a long time before.

The city again demurred, but the court overruled said demurrer, and we think rightly so, as this petition, besides being invulnerable in this statement of facts necessary to the recovery under the law of master and servant, alleges furthermore that the city was conducting a quarry for profit in its corporate capacity and not as an agent of the state in upholding the public peace. Upon the overruling of this demurrer to the amended petition, the city filed a reply denying all allegations of the amended petition. At the close of plaintiff's testimony, and again at the close of all the testimony, the city filed motions asking the court to arrest the case from the jury and to direct a verdict for the defendant, both of which motions were overruled by the court. Special charges were given and special charges were refused, on all of which error is predicated by the city, and the court charged the jury generally, leaving it to them to find as a matter of fact whether the city acted in a governmental capacity or in its corporate capacity for its own private ends, to which, as well as to the charge generally, the city excepted. The jury returned a verdict for $12,500 for plaintiff. The city filed a motion for a new trial, which was overruled by the court, and judgment was entered upon the verdict.

An examination of the record becomes necessary to determine whether the court erred in overruling the motion to direct a verdict for the plaintiff, in leaving the question in what capacity the city acted to the jury, and in overruling the motion for a new trial.

Plaintiff in his amended petition alleges that the city, for a long time previous, had charge of said quarry, cutting, excavating by blasting and other means stone from the same, which the city sold to dealers and consumers for profit, and had been so doing for a long time before.

To determine this question we must find from the record whether the city conducted a private corporate enterprise for profit, or acted as agent for the state, guarding the peace and safety of its people.

We fully agree with counsel for plaintiff when he lays down the rule that "the act is ministerial when a thing is done by the city as a private proprietor and for profit." What does the record disclose? Neither the amended petition alleges, nor does any evidence show as claimed in plaintiff's brief, that the city owned the said quarry. The only testimony upon this point was that of Mr. Ruehrwein, superintendent of the work house, who stated that the quarry had been worked about seven years, always by prisoners, not in winter but in summer when the weather was favorable (Record, page 248), and that of the plaintiff who stated (Record, page 15), "the average was forty-five to eighty-five and ninety prisoners; of course every day was not alike."

Upon the question of working this quarry for profit as a private enterprise of the city in its corporate capacity, the following is the only testimony introduced (Record, p. 437):

"Mr. Bell, at this quarry, from the time you went there on the 5th of July, I wish you would tell these gentlemen what it was that they got out of that quarry? A. They quarried rock, and the building rock was sold to the various builders, and the small rock was hauled down to the prison sheds and the prisoners that was unable to walk to the hill, such as cripples, one-legged fellows and one armed fellows—they were broken—they hauled the rock down there for them.

"Q. Broken up into what? A. Broken up into four different sizes, very small size, a little larger—there were four different sizes of them. The large size, regular macadam, was sold to people for driveways, and the smaller lots were—I don't know what they could use them for—driveways."

Upon this state of facts the jury found the city was engaged in an enterprise for purely municipal profit, and not in the exercise of a governmental function. This certainly is error. The mere incidental profits the city received from the sale of a few of the rocks quarried does not make it a municipal enterprise. The city in the maintenance of its work house received a remuneration for the labor of a majority if its prisoners detained therein, and yet no one will claim that thereby the work

house becomes a private municipal enterprise, and is not one of the means whereby the city conserves the peace of its inhabitants.

The rule is laid down in *Patrick Curran* v. *The City of Boston,* 151 Mass., p. 105, wherein the syllabus reads:

"The city of Boston is not liable for personal injuries occasioned to an inmate of its house of industry by the negligence of the officers and servants employed by the board of directors of public institutions to administer its affairs, although at the time such inmate is engaged in labor from which the city derives profit."

The court say (p. 508):

"By the statute authorizing the erection and maintenance of work houses by the city, the mode of performing a strictly public duty was provided for which can not be of any pecuniary advantage to the cities or towns instituting them. No such case as presented exists where a city has undertaken to build particular works, as water works, sewers, etc., where a city acts as an agency to carry on an enterprise to some extent commercial in its character, for the purpose of furnishing conveniences and benefits to such as choose to pay for them. This element of consideration then comes in and in such case it is usually held that the liability exists on the part of the city for an injury to an individual through negligence in building or maintaining such works."

On page 509:

"Nor do we conceive of any reason why the city should be held responsible because some revenue is derived from the labor of the inmates. It is required by the statute that these inmates should be kept at work but the institution is not conducted with a view to pecuniary profit. It is not suggested that the expenses of maintaining the work house are met by what is derived from the labor of the inmates, or that any profit above them is made, even if the entire expense is not met by taxation by reason of the profit thus derived, which profit is merely incidental. The object and purpose of the work house and the conduct of such are not thus shown to be of the nature of a business. It only appears that as a public institution it is managed in a judicious and governmental manner."

Counsel for plaintiff in his argument before the general term and in his brief raises the question that the city is nevertheless

liable because the law (Section 1536-370, Revised Statutes), authorizing the employment of prisoners outside of the work house, makes this dependent upon the passage of a city ordinance authorizing such employment; that the defendant, the city, has not offered proof of such ordinance.

A careful examination of the record, however, discloses the fact that this question was not raised at all below, neither in the pleadings nor in the trial by evidence. We must, therefore, be governed by the rule of law which makes it a presumption of fact that public officers do as the law and their duty requires them (Lawson on Presumptive Evidence, p. 67). In accordance with the rule laid down by the Supreme Court of the United States in *Bank of United States* v. *Dandridge,* 12 Wheaton, 70, and by Chief Justice Thurman of our state in *Combs & Ewing* v. *Lane,* 4 O. S., 112, where the syllabus reads:

"In respect to official acts the law will presume all to have been rightfully done unless the circumstances of the case overturn this presumption; and secondly, acts done which presuppose the existence of other acts to make them legally operative are presumptive proof of the latter. Facts presumed are as effectually established as facts proved so long as the presumption remains unrebutted."

Besides, it may be said, in passing, that such an ordinance does exist. Coppock & Hertenstein's Ordinances of Cincinnati, page 344, Section 44.

Did the court, therefore, err in overruling the motion to take the case from the jury at the close of plaintiff's as well as of all the testimony, and in directing the jury that it was their duty to determine whether the city acted in a governmental or municipal capacity? Our answer must be yes to all these questions.

We have cited all the evidence introduced purporting to maintain the claim of plaintiff that the city was engaged in a private municipal enterprise for profit. The evidence upon this question was not controverted. Upon such a state of facts it became the duty of the trial court to pronounce the law, and not leave to the jury the finding of the facts and the law upon them. Under our view of the law, the court should have granted all these motions.

But granting, for argument's sake, that the court rightfully charged the jury to find whether the act of the city was governmental or ministerial, then the charge is fatally defective in not laying down any rule to guide the jury in their determination of the quality of said act.

It was not enough to charge the jury to find in what capacity the city acted, but it was also the duty of the court to lay down to them a rule of law under which the jury could determine whether the act was ministerial or governmental. And the said charge was also erroneous in directing the jury that the burden rested on the city to show by preponderance of the evidence that the act was governmental, for the burden rested throughout upon the plaintiff to prove all the allegations of his petition necessary to hold the city liable, and among these allegations one of the most important was that the city acted in its private corporate capacity and was not performing a delegated state function.

Error has also been assigned by the city for the refusal of the court to give certain special charges requested by it, but we do not find any error therein.

After a careful examination of the evidence and the law, realizing fully the hardships of this case, but believing the judgment to be both against the law and the evidence, the prayer for a reversal of said judgment must be granted and final judgment must be entered for the plaintiff in error. Whatever relief the plaintiff is entitled to must be given by the Legislature.